IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LESLIE SUE MCQUEEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-24-142-GLJ |
| | ) |
| FRANK BISIGNANO,[1] | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Claimant Leslie Sue McQueen requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted for Michael O'Malley as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on January 19, 1973, and was 50 years at the time of the ALJ's decision. (Tr. 40, 47). She has completed the ninth grade and has past relevant work as a receptionist. (Tr. 34, 62-63, 237). Claimant asserts she has been unable to work since March 27, 2021, alleging disability due to due to rheumatoid arthritis, lupus, degenerative disc disease, carpal tunnel, osteoporosis, neck pain (and surgeries), fibromyalgia, depression, brain fog, and hearing loss in the right ear. (Tr. 236).

### Procedural History

Claimant applied for supplemental security income (SSI) under Title XVI of the Social Security Act (the Act). In an October 4, 2023, decision, the ALJ found Claimant not disabled under the Act. (Tr. 17-34). The Appeals Council subsequently denied review (Tr. 1), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. The Court has jurisdiction under 42 U.S.C. § 1383(c)(3).

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. At step two, the ALJ found that Claimant had severe impairments of rheumatoid arthritis, cervical and lumbar spinal degenerative disk disease, carpal tunnel syndrome, and right knee trauma, as well as nonsevere fibromyalgia, depression, and PTSD. (Tr. 19-20). Next, he found that Claimant's impairments did not meet a listing. (Tr. 14). At step four, he found that

Claimant retained the residual functional capacity ("RFC") to lift/carry/push/pull ten pounds occasionally and less than ten pounds frequently; sit for six out of eight hours per day; stand and/or walk a combined two out of eight hours per day; never climb ladders, ropes, or scaffolds, use foot controls with both feet, or reach overhead with both hands; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; and frequently perform tasks such as reaching in other directions, handling, and fingering. (Tr. 22). The ALJ thus found that Claimant can perform her past relevant work as a receptionist. (Tr. 34).

The relevant evidence reflects that in June 2018 Claimant saw Dr. Jason Sparks with symptoms indicative of cubital tunnel syndrome. She had previous imaging showing atypical thoracic spinal hemangiomas. (Tr. 343-344). Claimant next visited Dr. Tim Petingell for electrodiagnostic testing of her extremities that revealed left carpal tunnel syndrome. In July 2018 she returned to Dr. Sparks to review the test results which indicated the cubital tunnel syndrome was still present. In December 2018 she was diagnosed with lateral epicondylitis of the right elbow. (Tr. at 347-353). After undergoing right carpal and cubital tunnel release surgeries, Claimant followed up with Dr. Sparks and again returned to Broken Arrow Family Clinic ("BAFC") for right elbow and left knee injuries sustained in a fall in July 2019. (Tr. 358, 405-409, 1610-1613). In October 2019, Claimant underwent left carpal and cubital tunnel release surgeries. (Tr. 330-333, 360, 392-394, 396-397, 1349-1350).

Claimant began seeing Dr. William Surbeck, II at Tulsa Bone & Joint ("TBJ") for rheumatoid arthritis and CREST syndrome. In May 2019 she returned to Dr. Sparks

regarding her upper extremity conditions. (Tr. 354, 1341-1342). In September 2019, she then saw Dr. Surbeck for follow up concerning her rheumatoid arthritis. (Tr. 1347-1348).

In January and February 2020, in addition to receiving additional Orencia infusions, Claimant saw Dr. Surbeck for rheumatoid arthritis and CREST syndrome and further received treatment for left leg numbness and right ear hearing loss. (Tr. 1360-1361, 1369-1370). During that same period, Claimant also underwent lumbar and cervical MRI scans that revealed evidence of previous fusions as well as bulging or protruding disks. (Tr. 2658, 2661). A thoracic CT scan revealed a diffuse mildly sclerotic T8 abnormality. (Tr. 334-338, 345, 1318-1319). Between July and September 2020, Claimant received ongoing Orencia infusions (Tr. 1393-1396, 1402), and then ended the year by receiving additional Orencia infusions and following up with Dr. Surbeck regarding her rheumatoid arthritis, partial CREST syndrome, and fibromyalgia while also undergoing an implantation of an osseointegrated right ear hearing aid. (Tr. 906-907, 1404-1407, 1413-1416).

In January 2021, Claimant underwent another Orencia infusion and a cervical MRI scan which showed subcutaneous emphysema with moderate bulging disks and uncinate hypertrophy (Tr. 367, 1422-1423. Claimant spent the next month receiving another infusion and following up with Dr. Surbeck for her rheumatoid arthritis, CREST syndrome, and fibromyalgia while also visiting BAFC for abdominal, back, and right upper rib pain. She saw Dr. Sparks for increasing neck pain and starting treatment with Advanced Pain of Tulsa ("APT") for neck, back, and right knee and shoulder pain. (Tr. 361-362, 1570-1577, 2586-2589). Claimant also underwent another cervical MRI scan showing her previous

fusion, bulging and protruding disks, uncinate hypertrophy, and mild spinal canal and neuroforaminal stenosis. (Tr. 368-369).

In March and April 2021, Claimant underwent bilateral hip and lumbar x-rays showing varying degrees of degenerative changes. (Tr. 2576, 2578, 2582). In May 2021 Claimant was treated at SJENT for cellulitis surrounding her implanted right ear hearing aid. Claimant followed up with Dr. Surbeck for her rheumatoid arthritis and fibromyalgia with Raynaud's phenomenon, an Orencia infusion, and APT for a cervical epidural steroid injection. (Tr.1309-1310, 1443-1446, 2536-2539). Also in May 2021, Claimant was hospitalized at St. John Medical Center for almost two weeks following a rollover ATV accident where she underwent multiple surgeries after sustaining numerous injuries including widespread abrasions, a right tibial plateau (leg) fracture, and right radial head (elbow) fracture. (Tr. 517-518, 735-750, 752-757, 759-771, 773-777, 779-782, 799-819, 820-849, 851, 853-854, 856-861, 955-957, 976-987, 989-990). After her discharge from the hospital, Claimant was transferred to St. John Rehabilitation Hospital for just over a week to address to her right leg and right elbow fractures. (Tr. 2664-2702).

In January and February 2022, Claimant visited TBJ for Orencia infusions and APT for a cervical epidural steroid injection and her neck, back, and right lower extremity issues. (Tr. 1519-1522, 2541-2544, 2618-2621). In March 2022, Claimant visited Dr. Surbeck for another Orencia infusion. (Tr. 1523-1526). Claimant also underwent a right medial leg hardware block at APT after undergoing a consultative physical examination by Dr. Richard Roberts where she addressed the pain and/or swelling in her hands, feet, shoulders, and knees with right side hearing loss.

In April 2022, she had another cervical epidural steroid injection and was seen for a hand cyst and right knee pain at APT, BAFC, and TBJ. (Tr. 1530-1532, 1582-1585, 2549-2552). Claimant visited BAFC for pain and/or numbness in her extremities, neck, and back, and underwent another cervical epidural steroid injection at APT. (Tr. 1590-1593, 2554-2559). She continued seeing Dr. Coder and APT for back and neck pain, and underwent a lumbar MRI that revealed minimal/mild to moderate issues, returned to Dr. Sparks for feet numbness and tingling. She began physical therapy for her neck and back in August 2022. (Tr. 2174-2177, 2226-2227, 2630-2633, 2713-2714, 2718-2723).

Claimant spent the remainder of 2022 continuing physical therapy for her neck and back. (Tr. 2178-2205). She also had additional procedures including a lumbar selective nerve root block) and/or follow up treatment for spinal and/or extremity symptoms with Dr. Sparks, APT, Dr. Surbeck, and Dr. Coder. (Tr. 2228-2231, 2444-2445, 2560-2565, 2634-2641, 2709-2710). She resumed physical therapy for her right knee between January and May 2023 (Tr. 2209-2224), during which time she continued seeing APT, TBJ, and Dr. Sparks for her neck (including epidural steroid injections), right leg, and right knee (with an MRI of the latter showing degenerative signal and chondromalacia) while also undergoing a lumbar selective nerve root block and surgical removal of her right knee hardware. (Tr. 2161-2162, 2167-2168, 2232-2236, 2400-2403, 2449, 2451-2453, 2456-2461, 2646-2653). During summer 2023, Claimant underwent a cervical CT scan that revealed previously implanted surgical hardware along with multilevel degenerative disk changes. (Tr. 2654-2657, 2774).

At the administrative hearing, Claimant testified that she can lift about 20-30 pounds. Claimant cannot sit for very long periods, and testified she does not feel she can work any longer because her hands feel sore with stabbing pains. Her feet hurt, and when she slides out of bed and puts her feet on the floor, she walks on the sides of her feet because of pain she described as needles and pins. Her body is stiff in the morning. She feels helpless and cannot do what she used to do. She received injections to the neck in April which lasted about a week and a half and had another set of injections in June. She drives to a doctor appointment once a week but cannot get to her physical therapy appointments three times a week because she is too sore to drive. She has neck pain and can fold clothes for about 10-15 minutes before she has to lay down with a heating pad on her neck and a fan to cool her hands, which she does for a few hours every day. When she is having a bad day, she cannot get out of bed because of pain in her back, feet and hands. She is unable to stand up straight. The bad days occur about every three weeks before the next infusion, but she still feels sick and achy. The injections take a couple of days before providing any relief. The injections wear off about a week and a half prior to the next infusion. Her memory is bad, her eyes are blurry, and she has blacked out on occasion. (Tr. 23-24, 52-62).

## Review

Claimant asserts, inter alia, the ALJ failed to apply the correct legal standards when assessing the medical evidence and failed to properly analyze the subjective statements in the record pursuant to SSR-16-3p. Specifically, Claimant contends the ALJ committed reversible error by failing to discuss uncontroverted and/or significantly probative evidence

that conflicted with his findings as to Claimant's physical and mental limitations. The Court agrees that the ALJ failed to properly assess Claimant's physical impairments and subjective statements, and the case should be reversed and remanded.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013). The ALJ is required to consider all Claimant's medically determinable impairments, singly and in combination; the statute and regulations allow nothing less and a failure to do so is reversible error. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir 2006). The ALJ may not ignore evidence that does not support his decision, especially when that evidence is significantly probative. *Biggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001). Furthermore, the ALJ must support his conclusions with specific references to the evidence in the record and interpret that evidence fairly. *Winfrey v. Chater,* 92 F.3d 1017, 1024 (10th Cir. 1996) (the ALJ erred by failing to relate her conclusions to the evidence).

Despite finding Claimant capable of standing and/or walking two out of eight hours a day and sitting six out of eight hours a day without any sort of sit/stand option, as well as frequent reaching, handling, and fingering without any cervical mobility limitations (Tr. 22), the ALJ failed to discuss a substantial amount of uncontroverted and/or significantly

probative evidence that conflicted with such findings. With over 2,400 pages of medical evidence, the ALJ failed to address numerous abnormal findings which were consistent with greater limitations than he found to exist. For example, the ALJ's decision failed to acknowledge that since January 2021, Claimant displayed multiple abnormal findings that included: (1) tenderness in the hands, right knee, cervical spine, lumbar spine, chest wall, right lower extremity (including the knee), and hands; (2) decreased cervical, lumbar, generalized (musculoskeletal), right lower extremity (including the knee), right upper extremity, and bilateral hand mobility (sometimes with pain); (3) generalized (musculoskeletal), lumbar, and upper and lower extremity weakness; generalized (musculoskeletal), lumbar, and cervical (including trapezius) muscle spasms; (4) facet loading pain; (5) right shoulder, left hip, and upper and/or lower extremity radicular pain; (6) mild to moderate degenerative changes and up to moderate neuroforaminal stenosis in the lumbar spine; (7) right lower extremity (including the knee) swelling; (8) bilateral ulnar drift of the fingers; (9) positive straight leg raise and other orthopedic testing; (10) arthritic or limping gait (with right weak heel and toe walk); (11) upper and lower extremity numbness or paresthesias; and (12) right lower extremity muscle atrophy. (Tr. 17-34, 955, 978, 990, 1424, 1457, 1470, 1482, 1498, 1500-1502, 1594, 1599, 2161, 2174-2175, 2181, 2193-2194, 2209-2210, 2217-2218, 2226-2227, 2231-2232, 2402, 2458, 2573, 2578, 2587, 2591, 2595, 2599, 2603, 2607, 2611, 2615, 2619, 2623, 2627, 2631, 2635, 2639, 2643, 2647, 2651, 2655, 2681, 2699, 2727, 2730). In light of these omissions, the Court finds the ALJ failed to adequately acknowledge and analyze the medical evidence. *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996); *Hardman v. Barnhart,* 362 F.3d 676, 681

(10th Cir. 2004). *See also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (harmless error doctrine applies only in the exceptional circumstance where a court may confidently say that no reasonable ALJ, correctly following the law, could have resolved the matter any other way). The Court must be able to follow the logic, and here it cannot. *See id.*, 2013 WL 4849101, at *2 ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (citing *Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

Moreover, the discussion of the medical evidence did not include an explanation of Claimant's subjective statements. (Tr. at 22-34). The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent is in alignment with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

(10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4]  As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations.  *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8.  An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole.  *See Casias,* 933 F.2d at 801.  An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).  The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient.  *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

---

[4]  Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*).  The undersigned Magistrate Judge agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

The ALJ failed to address the significance of her symptoms being aggravated by her daily activities. (Tr. 22-34, 986, 2174, 2193, 2197, 2199, 2201, 2203, 2209, 2451, 2595, 2599, 2603, 2607, 2611, 2615, 2619, 2623, 2627, 2631, 2635, 2639, 2643, 2647, 2651, 2655). Additionally, the ALJ failed to acknowledge Claimant's consistent and frequent medical contacts before and during the relevant period and her use of oral, infused, and injectable rheumatoid arthritis, muscle relaxant, narcotic and non-narcotic pain, anti-inflammatory, anticoagulant, gastrointestinal, vitamin supplement, and psychotropic medications. (Tr. 22-34, 735, 741, 756, 956, 977, 1443, 1455-1456, 1459, 1466, 1468, 1472, 1474, 1476-1477, 1480-1481, 1484-1485, 1488, 1497-1498, 1515, 1519, 1521, 1523, 1530-1531, 1534, 1536, 1560, 1584, 1592, 1596, 1600, 1604, 1608, 1616, 1624, 1640, 2228, 2230, 2235, 2400-2401, 2446-2447, 2451-2452, 2456-2457, 2459-2460, 2541, 2549, 2554, 2560, 2566, 2590, 2594, 2598, 2602, 2606, 2610, 2614, 2618, 2622, 2626, 2630, 2634, 2638, 2642, 2646, 2650, 2654, 2672), as well as her extensive physical and occupational therapy, and inpatient rehabilitation and home health care. (Tr. 22-24, 799-844, 2174-2205, 2209-2224, 2241-2249, 2664-2702).

It is well settled that while not required to discuss every piece of evidence in the record, an ALJ is required to discuss uncontroverted evidence that is not relied upon, as well as significantly probative evidence that he or she rejects. *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996). Moreover, it is also improper for the ALJ to selectively discuss the medical evidence to support an adverse decision. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). *Accord* SSR 96-8p, 1996 WL 374184, at *7 (noting that the narrative discussion accompanying an ALJ's RFC assessment must explain how any

material inconsistencies or ambiguities in the evidence of record was considered and resolved).

Because the ALJ failed to properly analyze the evidence of record, the Commissioner's decision is reversed and the case remanded to the ALJ for further analysis. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**IT IS SO ORDERED** this 19th day of September, 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**